IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANGELO MYERS, #N81525, <br><br>         Plaintiff, <br><br>v. <br><br>LATOYA HUGHES, <br>DR. MYERS, <br>B. BLUM, <br>WEXFORD, <br>JOHN DOE 1, and <br>JOHN DOE 2,[1] <br><br>         Defendants. | Case No. 24-cv-01763-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Angelo Myers, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

**THE FIRST AMENDED COMPLAINT**

Plaintiff alleges that on April 1, 2024, around 5:00 a.m., he fell from the top bunkbed while sleeping. (Doc. 13, p. 6). When he fell, the upper and middle sections of his body hit the steel toilet

---

[1] The Clerk of Court will be directed to update Defendants' names on the docket in accordance with this Order.

and sink, positioned in the cell next to the bed. He informed the first correctional officer he saw that morning about his injury, but Plaintiff did not see a nurse until 9:00 a.m. The nurse gave him 200mg of Ibuprofen and instructed Plaintiff to fill out a sick call request form. The nurse told Plaintiff that he would not be able to see a doctor until after three visits to a nurse about the same issue. After the appointment, he immediately submitted a sick call request. (*Id.*).

A week later, Plaintiff saw Nurse Practitioner Blum. Blum believed that Plaintiff had broken ribs, but an x-ray was needed. (Doc. 1, p. 6). Plaintiff informed Blum that he had been in constant pain since the incident and that the pain pills were not helping. Blum gave Plaintiff a lower bunk permit for a week and half and submitted Plaintiff for x-rays. (*Id.*). The x-rays taken a week later showed "modest displacement" of Plaintiff's seventh and eighth ribs. (*Id.* at p. 8). He was then given a higher dose of Ibuprofen. (*Id.* at p. 6).

Even with the higher dose of Ibuprofen, Plaintiff continued to experience pain. (Doc. 13, p. 6). Two weeks after receiving his increased dose of Ibuprofen, Plaintiff had an appointment with Dr. Myers. He told Dr. Myers that he was still suffering from pain and unable to sleep, which hindered his ability to "focus and function normally on a daily basis." Dr. Myers prescribed Plaintiff a pain patch for a month without giving Plaintiff a medical exam. (*Id.*). Since then, Plaintiff has sought further evaluation and additional treatment, but Dr. Myers has not taken his condition seriously. (*Id.* at p. 8). Plaintiff still is experiencing frequent and sometimes unbearable pain. Dr. Myers has stated that there is nothing "he can do about it." (*Id.*).

## PRELIMINARY ISSUE

In the case caption, Plaintiff lists "John Doe" as a defendant, whom he describes as an employee of the Illinois Department of Corrections. (Doc. 16, p. 1, 2). In the First Amended Complaint, he asserts that he notified "multiple correctional officers" of his concern that his bunkbed did not have a ladder and asked them to relocate him to cell with an available low

bunkbed. (*Id.* at p. 6). He also identifies an unknown nurse, who treated him the morning of his fall in the cellhouse and directed him to fill out sick call requests forms. (*Id.*). Plaintiff later states that John Doe is a correctional officer he notified about the potential harms imposed by the conditions of his confinement. He claims that John Doe disregarded the potential harm resulting in his injury that could have been easily abated. (*Id.* at p. 7). Plaintiff, however, later states that John Doe did not request for him to be immediately sent to the healthcare unit to be examined and informed him to submit sick call slips to receive medical assistance, denying him proper medical care. (*Id.* at p. 8). This statement matches his interaction with the unknown nurse. Construing the Complaint liberally, the Court finds that Plaintiff is attempting to sue two John Doe Defendants: (1) the correctional officer with whom Plaintiff spoke to before his injury about the conditions of his bunk bed - the Court will refer to this individual to as John Doe 1; and (2) the nurse who treated him in the cellhouse the morning of his injury - Court will refer to this individual as John Doe 2. The Clerk of Court will be directed to modify the docket to reflect these designations.

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

> **Count 1:** Eighth Amendment claim against Myers, Blum, Wexford, and John Doe 2 for deliberate indifference to Plaintiff's serious medical needs, displaced ribs and associated pain.
>
> **Count 2:** Eighth Amendment claim against Latoya Hughes and John Doe 1 for subjecting Plaintiff to unconstitutional conditions of confinement by assigning him to a top bunk without a railing to prevent him from falling.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed**

**without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

The Eighth Amendment prohibits the deliberate indifference to a prisoner's "serious medical needs," as deliberate indifference "constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 828 (7th Cir. 2009) (internal quotations omitted). To successfully state an Eighth Amendment claim for deliberate indifference, a plaintiff must plead that the defendant knew of a serious risk of harm and consciously disregarded it. *See Giles v. Godinez,* 914 F. 3d 1040, 1049 (7th Cir. 2019).

Plaintiff has failed to state a claim against John Doe 2, the nurse who saw him the morning he fell from his bunk bed. Plaintiff alleges that when he saw John Doe 2 soon after he injured himself, John Doe 2 did not ensure that he was sent to the healthcare unit to have his ribs examined immediately. (Doc. 13, p. 8). Rather, he was told to submit sick call requests, and as a result, he had to wait a week to see a provider. This single and isolated interaction with John Doe 2 is not sufficient for the Court to plausibly infer that John Doe 2 knew that there was a serious risk of harm to Plaintiff and then *intentionally* disregarded that risk. *Owens v. Duncan,* 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference). *See also Gutierrez v. Peters,* 111 F.3d 1364, 1374 (7th Cir.1997) ("isolated instances of neglect…cannot support a finding of deliberate indifference"); *Collins v. Seeman,* 462 F. 3d 757, 762 (7 Cir. 2006) ("A defendant with knowledge of a risk need not take perfect action or even reasonable action…his action must be reckless before § 1983 liability can be found."). Thus, Plaintiff has not stated a claim for deliberate indifference against John Doe 2 for the delay and denial of care.

---

[2] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

For the same reasons stated in the original merit review order, Plaintiff has again failed to state a deliberate indifference claim against Blum. (Doc. 12, p. 4). Plaintiff claims that Blum failed to "give an x ray in a timely matter." (*Id.* at p. 8). He argues that the fact that he had to wait twelve days from the date of injury to receive an x-ray amounts to failing to provide proper medical care.

Plaintiff's delay in receiving an x-ray is not considered independently, as the Court examines "the totality of an inmate's medical care when determining whether prison officials have been deliberately indifference to an inmate's serious medical needs." *Walker v. Peters,* 233 F. 3d 494, 501 (7th Cir. 2000). As previously stated, Blum's conduct, as pled, does not amount to deliberate indifference. At Plaintiff's first and only appointment with Blum, Blum diagnosed Plaintiff with a broken rib, a condition which "generally heal[s] on [its] own within six weeks."[3] Blum ordered an x-ray and issued Plaintiff a permit for a low-bunk bed. After Plaintiff's x-ray revealed that he had two displaced ribs, Plaintiff was given a higher dosage of ibuprofen for his pain. While Plaintiff was unhappy with the fact that he had to wait twelve days to receive an x-ray, nothing about Blum's treatment decision allows the Court to plausibly infer criminal recklessness towards a risk to Plaintiff's health. Accordingly, Count 1 is dismissed as to Blum.

Plaintiff also has not stated a viable claim against Wexford. Plaintiff states that Wexford has an unofficial sick call practice of requiring inmates to submit three sick call slips before seeing a doctor or nurse practitioner. (Doc. 1, p. 8). This policy results in delayed care. As the Court previously ruled, assuming this policy exists, it did not impact Plaintiff. According to the First Amended Complaint, he submitted a single sick call request and was seen by Nurse Practitioner Blum a week later. (Doc. 13, p. 6). Therefore, the three sick call request policy did not cause or contribute to a constitutional violation. Count 1 is dismissed as to Wexford.

---

[3] *See Broken Ribs*, Mayo Clinic (Feb. 15, 2023) https://www.mayoclinic.org/diseases-conditions/broken-ribs/diagnosis-treatment/drc-20350769 (last visited February 25, 2025).

The Court will allow Count 1 to proceed against Dr. Myers. Plaintiff claims that since seeing Dr. Myers in the weeks following his injury, his pain has continued. (Doc. 13, p. 8). He has requested further evaluation and treatment by Dr. Myers, but Dr. Myers has refused to examine him on multiple occasions and accused Plaintiff of "playing games." Dr. Myers has failed to further treat Plaintiff and has stated that there is nothing further he can do. The Court finds these allegations sufficient to state a deliberate indifference claim against Dr. Myers.

**Count 2**

Plaintiff sues Correctional Officer John Doe 1 and Director Latoya Hughes for ignoring the potential risk imposed by his cell conditions. (Doc. 13, p. 7). He states that prior to his fall, he spoke to correctional officers about the lack of a ladder or any other type of device that would assist in climbing in and out of the bunkbed. (*Id.* at p. 6). He requested that the correctional officers move him to a cell with a low bunkbed. (*Id.* at p. 6). As to Director Hughes, Plaintiff alleges that the design of the bunk beds put inmates at risk of injury because of the lack of a ladder and because there is "nothing there to prevent someone from rolling out the bunk while asleep." (*Id.* at p. 7). He claims that the Illinois Department of Corrections and its subordinates were put on notice of "this active threat" by injuries sustained by other inmates in the past. Plaintiff asserts that Hughes was made "keenly aware and fail[ed] to abate" and cites to a grievance he wrote. (*Id.*).

The absence of ladders and guard rails are "common feature[s] of prison bunk beds." *Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689 (7th Cir. 2013). Thus, standing alone, the lack of a ladder or a guard rail does not "raise a risk of serious harm sufficient to support Eighth Amendment liability." *Benjamin v. Foster,* No. 19-CV-253-JPG, 2019 WL 1412604, at *2 (E.D. Wisc. Mar. 28, 2019) (citations omitted). *See also Davis v. Pollard,* No. 19-C-466, 2020 WL 4015513, at *5 (E.D. Wisc. July 16, 2020) ("District courts in this circuit have routinely determined that a prison's lack of bunkbed ladders, by itself, does not pose a substantial risk of serious harm.");

*Blue v. Baenen,* No. 13-cv-1439, 2016 WL 871129, at *9 (E.D. Wisc. May 20, 2016) ("Courts have uniformly held that the lack of a ladder to reach an upper bunk does not pose a serious risk of harm."). Plaintiff does not associate his need for a low bunkbed, a ladder, or guard rail to any kind of medical condition, disability, or special circumstance, and the condition that Plaintiff was subjected to, a top bunkbed without a ladder or guard rail, "was not sufficiently serious to raise Eighth Amendment concerns." *Blue,* 2016 WL 871129, at *9. See also *Estate of Simpson v. Gorbett,* 863 F. 3d 740, 746 (7th Cir. 2017) (finding at summary judgment that there was not sufficient evidence to conclude that assigning an obese man who had previously been intoxicated to a top bunk was so dangerous as to deny the man "the minimal civilized measure of life's necessities."). Therefore, Count 2 is dismissed. The Court also dismisses the requests for injunctive relief, as they are tied to Count 2. (Doc. 13, p. 5).

### OFFICIAL CAPACITY CLAIM

Because the requests for injunctive relief have been dismissed and the remaining defendant, Dr. Myers, cannot be sued for monetary damages in his official capacity, the official capacity claim directed against Dr. Myers is dismissed with prejudice. See *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)*; Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

### DISPOSITION

For the reasons set forth above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. The Clerk of Court is **DIRECTED** to terminate "John Doe" as a defendant and add John Doe 1 and John Doe 2 as defendants to the docket. **COUNT 1** shall proceed against Dr. Myers and is **DISMISSED** as to Blum, Wexford, and John Doe 2. **COUNT 2** and the related requests for injunctive relief are **DISMISSED.** Because there are no surviving claims against Hughes, Blum, Wexford, John Doe 1, and John Doe 2, the Clerk of Court **SHALL TERMINATE** these individuals as parties on the docket.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Dr. Myers the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each defendant's place of employment. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the defendant needs only to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want

of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 7, 2025**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.